UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB FARES GIHA,<br><br>    Petitioner,<br>v.<br><br>JEFFERSON B. SESSIONS III,<br>U.S. Attorney General,<br><br>    Respondent. | Case No. 1:16-cv-00893-EPG<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 42) |

**I.     BACKGROUND**

On October 8, 2015, Caleb Fares Giha ("Petitioner" or "Caleb") filed with the United States Court of Appeals for the Ninth Circuit a petition for review of a final order of removal of the Board of Immigration Appeals (the "Board"). *Giha v. Sessions*, No. 15-73085 (9th Cir.). On June 23, 2016, the Ninth Circuit found that a genuine issue of material fact exists as to petitioner's claim of United States citizenship, and transferred the matter to this court pursuant to 8 U.S.C. § 1252(b)(5)(B) for a *de novo* review of Petitioner's claim of derivative citizenship under former 8 U.S.C. § 1432. (ECF No. 1). Petitioner is currently detained by Immigration and Customs Enforcement pursuant to a temporary stay of removal pending resolution of this matter.

On September 28, 2017, the United States Attorney General ("Respondent") moved for summary judgment on the ground that Petitioner cannot establish citizenship eligibility under § 1432(a). (ECF No. 42). Respondent argues that Petitioner is unable to show that his biological

parents were legally separated because Petitioner's mother had a prior outstanding marriage that impeded her ability to marry Petitioner's father. *Id.* On December 21, 2017, Petitioner submitted his opposition to the motion for summary judgment, and requested further discovery. (ECF No. 50). On January 11, 2018, Respondent submitted his reply. (ECF No. 53).

On February 8, 2018, the Court directed the parties to conduct limited discovery and to submit supplemental briefs. (ECF No. 55). On April 10, 2018, and May 1, 2018, Respondent and Petitioner submitted their respective supplemental briefs. (ECF Nos. 56, 57). On May 14, 2018, Respondent submitted a supplemental reply brief. (ECF No. 58).

On July 11, 2018, the Court heard oral arguments, and took the motion under advisement. (ECF No. 65). After careful consideration of the parties' briefs and the relevant legal authority, the Court finds that Respondent is entitled to summary judgment.

## II. UNDISPUTED FACTS

Caleb Fares Giha was born in Lima, Peru on June 1, 1982. His biological parents are Walter Victor Giha ("Walter") and Maria del Pilar Hernandez Marquez ("Maria").

Walter was born in Lima, Peru on March 23, 1936. On June 22, 1959, Walter married Jesus Mansilla ("Jesus"). On October 26, 1970, according to Peruvian civil registry, Walter and Jesus divorced.

Maria was born in Lima, Peru on February 9, 1953. On August 16, 1973, Maria married Gandolfo Salvador Mestre Saenz ("Gandolfo"). On March 2, 1977, Maria and Gandolfo bore a son. Their son's birth certificate indicates that Maria and Gandolfo were married at the time of his birth.

Between 1977 and 1979, Maria and Walter started dating, and later began living together in Lima, Peru. They had two children: Zoila Erika Giha Hernandez ("Zoila") on October 2, 1983, and Petitioner, Caleb Jorge Giha Hernandez. They never married at a courthouse, a municipality, or a church. They never registered a civil union and never had a civil union recognized by a Peruvian court. A search of Peruvian civil registry found "no record of marriage" between Maria and Walter. Maria ended her relationship with Walter in 1986 or 1987, when she left Walter, Zoila, and Caleb.

On May 4, 1990, Walter obtained authorization to travel to the United States with Caleb. On August 27, 1990, Walter, Caleb, and Zoila were admitted to the United States as lawful permanent residents. Caleb was eight years old.

On August 19, 1999, when Caleb was seventeen years old, Walter became a naturalized citizen of the United States. Caleb did not naturalize on his own accord.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the moving party will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremkin v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this initial burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (quoting *Celotex Corp*, 477 U.S. at 324). The evidence of the nonmoving party is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "[T]he judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) (quoting *Anderson*, 477 U.S. at 249).

Nevertheless, the evidence must be significantly probative to support the claims. *Id.* at

248–49. The nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

**B. Derivative Citizenship Pursuant to 8 U.S.C. § 1432(a)**

"Citizenship for one not born in the United States may be acquired 'only as provided by Acts of Congress.'" *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005) (quoting *Miller v. Albright*, 523 U.S. 420, 424 (1998)). Derivative citizenship—a grant of citizenship to a foreign-born child upon the naturalization of a parent—is determined by the law in effect at the time that the critical events giving rise to eligibility occurred. *Minasyan*, 401 F.3d at 1075. Immigration and Nationality Act § 321(a), codified at 8 U.S.C. § 1432(a) (repealed 2000), which was in effect at the time of Walter's naturalization, governs Petitioner's claim to citizenship. Section 1432(a) provides, in pertinent part:

> (a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions: . . .
>
> (3) The naturalization of the parent having legal custody of the child when there has been a *legal separation* of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (repealed by Pub. L. 106–395, Title I, § 103(a), Oct. 30, 2000, 114 Stat. 1632) (emphasis added).

"'[L]egal separation of the parents,' as words in a federal statute, must take their meaning from federal law." *Wedderburn v. I.N.S.*, 215 F.3d 795, 799 (7th Cir. 2000). Under Ninth Circuit

precedent, a legal separation must be preceded by a legal marriage. *Barthelemy v. Ashcroft*, 329 F.3d 1062, 1065 (9th Cir.2003) (holding that a petitioner did not "enjoy derivative citizenship under the first clause of § 321(a)(3) because his natural parents never married and thus could not *legally* separate." (emphasis in original)). However, because there is no federal law of domestic relations, "legal marriage" must be defined as recognized by state or foreign law. *Minasyan*, 401 F.3d at 1076-77.

### C. Peruvian Domestic Relations Law[1,2]

Under Peruvian law, marriage is the voluntary union of a male and a female, formalized subject to the provisions of the Civil Code of Peru, for the purpose of having a life in common. *See* Civil Code of Peru art. 234 (1984). The Civil Code recognizes two types of such voluntary unions: marriage and de facto union. *See* Civil Code of Peru bk. III (1984). A marriage must be celebrated in accordance with the provisions of the Civil Code, and has no legal effect unless a certificate of marriage is registered in the civil registry. *See* Civil Code of Peru art. 126, 1069 (1936).

A de facto union is a voluntary union between a male and a female to achieve purposes and fulfill duties similar to those of matrimony. *See* Civil Code of Peru art. 326 (1984). Specifically, Article 326 provides, in pertinent part:

> A de facto union, carried out voluntarily between a male and a female, free of matrimonial impediments, in order to achieve purposes and fulfill duties similar to those of matrimony, gives rise to the community property regime, when applicable as long as that union has lasted at least two continuous years.
>
> The constant possession of this status, beginning at an approximate date, may be proven with any of the methods admitted by procedural laws, as long as there exists prima facie documentary evidence.
>
> A de facto union may end by reason of death, absence, mutual agreement or unilateral decision. In this last case, the judge may

---

[1] During the relevant period, 1973 to 1984, there were two successive Civil Code of Peru in effect, the 1936 Civil Code and the 1984 Civil Code.

[2] Pursuant to Fed. R. Civ. P. 44.1, "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law." Accordingly, in determining Peruvian domestic relations law, the Court has consulted all relevant sources and testimony offered by the parties as well as other sources available to the Court.

> award, at the request of the abandoned party, a sum of money as compensation for damages or maintenance, aside from the party's rights in accordance to the due process of the law in regards to a community property regime.

(emphasis added).

Pursuant to Article 82, those who are married are absolutely impeded from entering into a subsequent marriage or de facto union. *See* Civil Code of Peru art. 82 subsec. 5 (1936); Civil Code of Peru art. 241 subsec. 5 (1984), ECF No. 42-21 ("Unable to contract matrimony are: . . . (5) Those who are married."). A marriage is dissolved, and the bond of marriage desisted, by means of divorce, nullification, or death of one of the spouses. *See* Civil Code of Peru art. 101, 253, 132 (1936). A divorce or nullification may be obtained through a judicial proceeding and final judgment. *See* Civil Code of Peru bk. IV, VI (1936).

Judgments of divorce and nullity of marriage are registered in the civil registry. *See* Civil Code of Peru art. 1069 subsec. 5 (1936); Law No. 26589(2030(6)), ECF No. 57-8 at 2; Law No. 26497(44(i)), ECF No. 57-10 at 2. Pursuant to Article 65 of the First Regulation for the Organization and Operation of the Registry of Civil Status, "[t]he final judgment granting divorce or annulment of marriage shall be forwarded by the Court to the official in charge of vital records at the location where the marriage certificate was issued." (ECF No. 56-7 at 2). Article 66 further provides:

> Once the [final judgment granting divorce or nullification] has been received, the contents of the [judgment] shall be noted in the margin of the certificate, and the date on which it was issued, the name of the judge and the notary public involved in the matter shall be indicated. This note shall be signed by the clerk in charge of the registry office and the record shall be archived in the applicable file with the same number of the marriage certificate to which it refers.

*Id.*

Prior to 1995, each municipality maintained a civil registry. Pursuant to Law No. 26497, enacted in 1995, a National Registry of Identification and Civil Status ("RENIEC") was created to organize and maintain identification records of natural persons, and to record the facts and acts related to their legal capacity and civil status. Law No. 26497, ECF No. 56-12 at 1-8. The supplementary provisions of Law No. 26497 also provide:

> Within a period not to exceed thirty-six (36) months from the effective date of this law, the staff and records that belong to the civil registry offices of local governments shall be included in the National Registry of Identification and Civil Status.
>
> The National Headquarters of the Registry of Identification and Civil Status is authorized to establish the procedures needed for relevant transfer and integration.

### D. BURDEN OF PROOF

In general, the government bears the burden of establishing the removability of an alien by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3)(A); *see also Berenyi v. Dist. Dir., Immigration & Naturalization Serv.*, 385 U.S. 630, 636–37 (1967) ("When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by 'clear, unequivocal, and convincing evidence.' But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship."). However, a foreign-born petitioner in a declaratory judgment action pursuant to § 1252(b)(5)(B) bears the burden of proving citizenship by a preponderance of the evidence. *See Scales v. INS*, 232 F.3d 1159, 1163 (9th Cir. 2000) ("Evidence of foreign birth, however, gives rise to a rebuttable presumption of alienage, and the burden then shifts to the petitioner to prove citizenship."); *Sanchez–Martinez v. INS*, 714 F.2d 72, 74 n.1 (9th Cir. 1983) ("In the de novo hearing in district court, the citizen is in the position of a plaintiff seeking a declaratory judgment. . . . He or she bears the initial burden of proof."); *Murphy v. I.N.S.*, 54 F.3d 605, 609–10 (9th Cir.1995) (indicating that a respondent with foreign birth subject to deportation bears the burden of proving derivative citizenship by a preponderance of the evidence); *see e.g. Anderson v. Holder*, No. CIV. 2:09-2519WBSJFM, 2010 WL 1734979, at *3 (E.D. Cal. Apr. 27, 2010) ("In a proceeding under 8 U.S.C. § 1252(b)(5), the petitioner bears the burden of proving citizenship by a preponderance of the evidence.").

### IV. DISCUSSION

Petitioner contends that he obtained derivative citizenship pursuant to former 8 U.S.C. § 1432(a)(3)-(5) on August 19, 1999, when his father became a United States citizen. It is

undisputed that Petitioner was under the age of eighteen and was lawfully residing in the United States at the time of his father's naturalization. He thus meets the requirements of subsections (a)(4) and (a)(5). The sole dispute in this matter is whether Petitioner meets the requirements of subsection (a)(3). The threshold issue is whether "there has been a legal separation of the parents," *i.e.* whether Maria and Walter were "legally separated," which requires a legal marriage.

Respondent contends that Petitioner cannot establish that his biological parents were legally separated because his parents, Maria and Walter, could not have legally married or entered a de facto union due to Maria's prior outstanding marriage. It is undisputed that Maria was legally and formally married to Gandolfo prior to starting her relationship with Walter. In addition, there is no record showing that Maria and Gandolfo's marriage was dissolved.

In support of his motion for summary judgment, Respondent offers the declaration of Carla Gal'Lino, an employee of the United States Department of Homeland Security in Lima, Peru. (ECF No. 56-1 at 2). Ms. Gal'Lino states that in the course of her employment she has used RENIEC for 10 years. *Id.* She has familiarity and understanding of the system and the records and information maintained in the database. *Id.* She also has knowledge of the process of registration of civil acts and is familiar with the ongoing process of incorporating the civil registries of various municipalities into RENIEC. *Id.*

Ms. Gal'Lino states that she contacted the sub-manager of the civil registry of RENIEC, who conducted a search of the database and located the marriage record of Maria and Gandolfo. (ECF No. 42-4 at 3). The record indicated that Maria and Gandolfo were married in the San Martin de Porres municipality, which is one of the 43 municipalities of Lima. *Id.* The civil registry of San Martin de Porres was fully incorporated into the RENIEC database on January 5, 2007. (ECF No. 56-1 at 6; 56-15 at 2). She went directly to a RENIEC office to obtain the marriage certificate of Maria and Gandolfo and to search for a possible divorce. *Id.* On April 12, 2017, she obtained a copy of the marriage certificate, and did not locate any annotation indicating that Maria or Gandolfo had dissolved their marriage. *Id.*

Respondent tenders the marriage certificate of Maria and Gandolfo. (ECF No. 42-6 at 4).

The marriage certificate does not have an annotation regarding divorce on the left margin. *Id.* Respondent argues that the absence of an annotation demonstrates that Maria and Gandolfo never divorced, and that Maria had a prior outstanding marriage.

Respondent, therefore, has met his initial burden on summary judgment of establishing that there is an absence of evidence to support Petitioner's claim that his parents were legally separated. The burden now shifts to Petitioner to offer evidence of specific facts showing that there is a genuine issue for trial.

Petitioner asserts that the absence of a notation on a marriage certificate does not affirmatively establish Maria's marital status because RENIEC has incorporated incomplete and inaccurate municipal records. Petitioner argues that this question creates a genuine dispute of material fact as to whether Maria was divorced.

In opposition to the motion for summary judgment, Petitioner tenders the opinions of William Reuben and Jose V. Gallegos. Mr. Reuben is the Minister Counsellor and Consul General at the Embassy of Costa Rica in United Arab Emirates. (ECF No. 57-1 at 3). Since 1999, he has worked as a Social Development Specialist to the World Bank, and performed research on the civil registry system in Peru. *Id.* He is the co-author of the paper, "Identification as a National Priority: The Unique Case of Peru." *Id.* Mr. Reuben further states that during the 1970s and 1980s, the civil registries were poorly supervised and dependent on the municipal governments, which were corrupt and badly run. *Id.* at 4. RENIEC was created in 1995 in response to the poorly maintained and decentralized civil registries. *Id.* RENIEC has prioritized national identification at the expense of updating and integrating records pertaining to marriage and divorce, and as a consequence the civil registry records in RENIEC can be unreliable. *Id.* at 5. RENIEC is focused on integrating the new registries and is still struggling to integrate the historical civil records, especially divorce and marriage records. *Id.*

Mr. Gallegos is an associate professor of Social Development at Universidad de Piura in Lima, Peru, and has extensive knowledge of vital records in Peru. (ECF No. 57-4 at 2). Mr. Gallegos states that in order for divorce records to appear in RENIEC, an individual must retrieve the record from the municipality where the divorce took place and submit it to RENIEC.

9

Municipal governments process divorces and keep the official records of marriages. Mr. Gallegos further states that during the 1970s and 1980s, the municipalities were not in charge of issuing divorce decrees, and individuals would dissolve marriages through the Courts of Peace. *Id.* at 3. "As such, documentation of divorce proceedings may not have been registered with the local government office." *Id.*

Petitioner does not provide evidence that RENIEC has failed to fully incorporate available records from the relevant municipality, San Martin de Porres. Both Ms. Gal'Lino and Mr. Reuben agree that RENIEC is incomplete. Ms. Gal'Lino states that incorporation of civil registries into RENIEC is an ongoing process, and Mr. Reuben states that RENIEC is still struggling to integrate the historical civil records. (ECF Nos. 56-1 at 6; 57-1 at 5). However, Ms. Gal'Lino also states that the civil registry of San Martin de Porres—where Maria and Gandolfo were married and where their divorce must be registered—has been fully incorporated into RENIEC as of January 5, 2007. (ECF Nos. 56-1 at 6; 56-15 at 2). Mr. Reuben does not state that San Martin de Porres has not been incorporated into RENIEC, and Petitioner does not rebut Respondent's evidence that the records of the municipality have been fully incorporated into RENIEC.

Nor does Petitioner provide evidence that the municipality failed to provide RENIEC with its available historical records. Mr. Reuben states that local registry offices were "susceptible to all sorts of improper information handling and errors, including violations of basic security rules that led to the unauthorized disclosure, alteration, and destruction of personal data." (ECF No. 57-1 at 5). Mr. Gallegos states that municipal governments process divorces and keep the official records of marriages, and that individuals have to retrieve divorce records from municipalities and deliver them to RENIEC. (ECF No. 57-4 at 2). However, Respondent offers the marriage certificate of Maria and Gandolfo, the exact document that would contain an annotation of their divorce. Presumably, RENIEC did obtain this official record of marriage from the municipality. The document is not destroyed, and Petitioner does not argue that it has been altered in any way.

Petitioner also does not provide any evidence that Maria's divorce registration was

mishandled. Mr. Reuben states that during the 1970s and 1980s, the civil registries were poorly supervised and municipal governments were corrupt and badly run. (ECF No. 57-1 at 4). Mr. Gallegos states that during the 1970s and 1980s, individuals would dissolve marriages through the Courts of Peace, but "documentation of divorce proceedings may not have been registered with the local government office." (ECF No. 57-4 at 2).

The registration of divorces is a ministerial duty. Under the commands of Peruvian law, upon issuing a judicial divorce decree, a court must forward the decree to the official in charge of vital records at the location where the relevant marriage certificate was issued. (ECF No. 56-7 at 2). And, upon receipt of such a divorce decree, the official in charge of vital records must note the divorce in the margin of the marriage certificate. *Id.* Petitioner does not provide evidence that a particular judge, official in charge of vital records, or another public official failed to perform their ministerial duty. Petitioner only provides evidence that during the 1970s and 1980s, documentation of divorce proceedings *may not have* been registered with local government offices, and municipalities were not good at their jobs.

In the end, given that it is undisputed that Petitioner's mother had a prior marriage, it is Petitioner's burden to put forth some evidence such that a reasonable jury could find that his mother was divorced. Petitioner has no such evidence. All available records indicate that Petitioner's mother was not divorced. Petitioner's evidence regarding deficiencies in Peruvian record keeping raises some question of whether it could theoretically be possible for her to be divorced without any record or other evidence. But this theoretical question is insufficient to raise a genuine dispute of fact or otherwise meet Petitioner's burden to prove his derivative citizenship. Therefore, on the record before the Court, Petitioner cannot meet his burden of establishing by a preponderance of the evidence that his biological parents were legally separated. Accordingly, Respondent is entitled to summary judgment.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Respondent's motion for summary judgment, (ECF No. 42), is GRANTED.

The Clerk of the Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: **September 28, 2018**  /s/ Eric P. Gross
UNITED STATES MAGISTRATE JUDGE